**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MARIA ELENA SAENZ,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **NO.  EP-13-CV-047-RFC** |
| | § | **(by consent)** |
| **CAROLYN W. COLVIN,**[1] | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i) and 423, and her claim for supplemental security income benefits under Title XVI of the Act, 42. U.S.C. § 1382c(a)(3).  For the reasons set forth below, this Court finds that the Commissioner's decision should be AFFIRMED.

## PROCEDURAL HISTORY

On October 19, 2009, Plaintiff filed an application for benefits, alleging a disability onset date of July 15, 2009, due to problems with her right knee and right hand, high blood pressure, and

---

[1]   Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

insomnia. (R:174-185, 200)[2] Her applications were denied initially and on reconsideration. (R:103-107, 108-112, 114-118)  Plaintiff filed a request for a hearing, which was conducted on June 14, 2011. (R:116-117, 433-464)  The Administrative Law Judge ("ALJ") issued a decision on September 8, 2011, denying benefits. (R:48-68)  The Appeals Council denied review on December 19, 2012. (R:1-8)  Plaintiff commenced this action on February 20, 2013.  (Doc. 1)  The parties filed briefs outlining their positions.  (Docs. 18, 19)

**ISSUES**

Plaintiff's sole issue for review is whether the ALJ's assessment of Plaintiff's residual functioning capacity ("RFC") is supported by substantial evidence.  (Doc. 18:4)

**DISCUSSION**

**I.      Standard of Review**

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence "is more than a mere scintilla," and can be "less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence.  *Id*.  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

---

[2]      Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the transcript of the record of administrative proceedings filed in this case, (Doc. 16), is designated by "(R:[page number(s)])".

In applying the substantial evidence standard, the court may not re-weigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id*.; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## II.     *Evaluation Process*

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Before moving to step four, it is the responsibility of the ALJ to determine the plaintiff's RFC, which is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In doing so, the ALJ must consider all the record evidence, accommodate the limiting effects of the plaintiff's impairments, even those that are non-severe, and any related symptoms, and determine the plaintiff's maximum abilities despite her physical and mental limitations. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p.

In the present case, the ALJ found that Plaintiff has severe anxiety disorder, not otherwise specified, pain disorder, primary insomnia, degenerative joint disease of the right knee, tendinitis of the right wrist, hypertension, obesity, and diabetes mellitus. (R:57)  The ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled the listed impairments. (R:59)  After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform medium work, except: she can understand, remember, and carry out detailed, but not complex instructions; she can make decisions, attend, and concentrate for up to two hours at a time; accept instructions, and respond appropriately to changes in routine work settings; and she is illiterate in the English language. (R:62)  The ALJ determined that Plaintiff retained the capacity to perform her past relevant work as a sewing machine operator, Dictionary of Occupational Titles 786.682-054 ("DOT").  (R:64)  Consequently, the ALJ found that she was not disabled within the meaning of the Social Security Act through the date of the decision.

## III.   The Parties Contentions

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination, because the ALJ failed to accommodate Plaintiff's severe knee impairment. (Doc. 18:5) She argues that a plaintiff is not required to produce objective medical evidence of the pain or supported symptoms alleged, only that there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain and symptoms alleged.  (Doc. 18:5)  Plaintiff argues that her RFC should reflect her alleged inability to stand and sit for extended periods and to perform pushing (pedaling) with the right lower extremity, as required by her past work.  *(Id.)*

Defendant asserts that the ALJ, after considering Plaintiff's subjective statements with the record as a whole, including all medical findings and opinion evidence, ultimately concluded that

Plaintiff was not fully credible regarding the intensity, persistence, and limiting effects of her symptoms. (Doc. 19; R:62-64) Defendant maintains that the ALJ was not required to accommodate such limitations because both the credibility and disability determinations are supported by substantial evidence. *Id*.

The parties have highlighted the following portions of the record:

In September 2009, Plaintiff was hospitalized for appendicitis, and examination reflected that her extremities were within normal limits and her neurological functions were grossly intact. (R:271) On October 22, 2009, the intake interviewer at Social Security observed Plaintiff experiencing difficulty standing and walking. (R:197) In November 2009, Plaintiff was seen in part for pain in her right knee, but on examination, Plaintiff's extremities, joints, peripheral pulses, edema, and neurological functioning were all rated normal. (R:325-326) On December 17, 2009, Dr. Jose A. Barahona, M.D., assessed osteoarthritis, but the report of examination showed that Plaintiff's extremities and neurological functioning were rated normal. (R:323-324)

On December 23, 2009, consultative examining physician Dr. Robert P. May, M.D., examined Plaintiff for complaints of pain and swelling in her right knee, occasional headaches, and insomnia; she complained that her knee crackled and occasionally locked up. (R:284) Plaintiff reported that she could stand for about an hour, had trouble walking, and had been unable to work because of pain and swelling in the right knee which she told him she had to use when working the sewing machine. (*Id*.) Dr. May observed Plaintiff limping somewhat, but noted that she could bend her right knee without any problems, that he could not hear any crackling, that the knee did not appear to lock, and that her gait was fairly normal. (R:285-86) Dr. May recorded an impression of internal derangement of the right knee, possible tendinitis. (*Id*.) Dr. May opined "I would think that

she could be returned to the work force in some capacity where she doesn't have to use her right knee continuously, but I don't think she can stand on it for more than [an] hour or so at a time." (*Id.*)

In April 2010, Plaintiff reported that she had fallen three weeks prior and hit her right knee; she was found to have tenderness in her right knee, but remained neurovascularly normal;  she was assessed with osteoarthritis and right knee pain. (R:321-322)  In June 2010, examining psychologist, Dr. Barrientos, noted that Plaintiff complained of chronic knee pain caused by her work as a sewing machine operator, which required constant movement of that leg.  (R:338)

In August 2010, Dr. Barahona submitted a letter that Plaintiff is under his medical care and had been diagnosed with arthritis, anxiety, diabetes mellitus type II, hypertension, obesity, and osteoporosis.  (R:359)   At her appointment with Dr. Barahona on August 18, 2010, Plaintiff had normal extremities and neurological functioning, indicating that any acute problem from the fall reported in April was not persistent.  (R:421)  Plaintiff was again assessed with osteoarthritis and right knee pain.  (R:422)

In October 2010, Plaintiff was assessed with myalgias and right knee pain.  (R:415)  In December 2010, although Plaintiff complained of right knee pain, examination revealed full range of motion in Plaintiff's extremities and no edema.  (R:413, 426, 428)

## IV.    *Relevant law*

Plaintiff's own subjective complaints are insufficient to establish disability.  *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.  A plaintiff, however, need not produce objective evidence of the pain itself or its severity, so long as there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or symptom alleged.  42 U.S.C. § 423(d)(5)(A).   Still, to the extent the plaintiff's statements about intensity, persistence, or

functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ, who is in the best position to observe the plaintiff and evaluate the credibility of such complaints and the relative weight to be given the evidence, must make a credibility finding based on consideration of the entire case record. (R:62); SSR 96-7p, 1996 WL 374186, at *2, 4; *see Falco v. Shalala*, 27 F.3d 160, 164 n. 18 (5th Cir. 1994); *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ is not required to incorporate into the plaintiff's RFC limitations found to be unsupported by the record and not credible. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The ALJ's credibility determination is entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). However, the ALJ must articulate specific reasons, grounded in the record, for the credibility determination. SSR 96-7p, at *2, 4. Seven factors the ALJ must consider in assessing credibility are: (1) the plaintiff's activities of daily living; (2) the location, duration, frequency, and intensity of the pain alleged; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain; (5) treatment other than medication the plaintiff has tried to relieve the pain; (6) any measures other than treatment the plaintiff has tried to relieve the pain; and (7) any other factors concerning the plaintiff's functional limitations and restrictions due to pain. *Id.*, at *3; 20 C.F.R. § 404.1529(c)(3). Other factors SSR 96-7p directs the ALJ consider in determining credibility include: (8) consistency of the plaintiff's statements with the other evidence of record and with other statements made by the plaintiff in connection with the disability claim or under other circumstances; (9) medical evidence regarding the character and location of symptoms, precipitating and aggravating factors, frequency and duration and daily activities that may indicate worsening or improvement of the underlying

condition over time; (10) medical treatment history demonstrating the plaintiff's attempts to seek medical treatment and to follow prescribed treatment, increasing doses of medication, referrals to specialists; (11) other sources of information such as public and private agencies, other practitioners, family and friends; and (12) the ALJ's personal observations of the plaintiff.  *Id.*, at *5-8.

## V.       *The ALJ's Credibility Determination*

In determining Plaintiff's RFC, the ALJ did find that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R:63)  The ALJ determined, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of such symptoms may not be entirely reliable.  (*Id.*)  The ALJ found such statements to be credible only to the extent they were consistent with the RFC the ALJ assessed.  (*Id.*)  The ALJ provided specific reasons for this credibility determination.

The ALJ noted that Plaintiff testified that she "stopped working due to a business-related layoff rather than her medical impairments," that "she drew unemployment for a few months and she was required to look for work during this period," and that "she looked for work during this time," and "stopped looking for work when she decided to file for disability." (R:63, 443-447)  The ALJ noted the inconsistency of Plaintiff's allegation of a July 2009 disability onset date and her continuing to look for work for three months after that time.  (R:63)  He noted that there was no evidence of a significant deterioration in Plaintiff's medical condition since the layoff, from which he found it could be reasonably inferred that her impairments would no more prevent her from performing her job than they did at the time she was laid off and continued to look for work.  (R:63, 453)

8

The Court finds that Plaintiff testified, more specifically, that she missed a week of work because of elevated blood pressure caused by the heat of her work environment. (R:443) She testified that when she returned to work, she was laid off again both because work was getting scarce and because of continued blood pressure issues. (R:444) Initially, Plaintiff answered that she had not looked for any other work after she had been laid off. (*Id.*) Then she testified that her unemployment benefits were suspended after three months because her employer asserted that Plaintiff had not returned to work after her week off for high blood pressure and was thus not laid off, but quit. (R:445) Plaintiff testified that at some point she decided to see an attorney about filing for disability and that after she did, she did not look for work any more. (R:445-446) Plaintiff then admitted that after she was laid off and before she went to consult with an attorney regarding disability, for three months she did fill out paperwork for the unemployment office telling them that she was looking for work as a machine operator, the same as her previous relevant work. (R:447) Plaintiff testified that although she did apply for such positions, she would not have accepted any of them had they been offered to her because of her knee, her high blood pressure, and her right hand. (*Id.*)

One could infer from Plaintiff's testimony that she had only ostensibly been looking for work for those three months in order to receive unemployment benefits. (*See* R:446-447) Whether Plaintiff was able to perform the positions for which she was applying or she was being disingenuous regarding her employment search in order to obtain unemployment benefits, either interpretation supports the ALJ's determination that Plaintiff's allegations may not be entirely reliable. Significantly, Plaintiff did not testify or allege in her social security paperwork that she ever missed

work or was laid off because she was unable to perform the pedaling, sitting, or walking requirements of the position.

In making his credibility determination, the ALJ additionally stated that there was an absence of any opinion from a treating or examining physician indicating that Plaintiff had any functional limitations greater than those determined by the ALJ.  (R:63)  Without further explanation, this statement appears to contradict the record.  The ALJ had previously summarized Dr. May's objective findings on evaluation of Plaintiff and his opinion that "I don't think [Plaintiff] can stand on [her right knee] for more than [an] hour or so at a time."  (R:58, 285-286)  This part of Dr. May's opinion was again acknowledged in discussing step three.  (R:60)  The ALJ never explicitly addressed Dr. May's opinion that "I would think that she could be returned to the work force in some capacity where she doesn't have to use her right knee continuously[.]"  (R:57-64, 285-286)

State agency medical consultant on reconsideration, Laurence Ligon, M.D., on February 17, 2010, found that Dr. May's consultative examination did not support the noted limitation of not being able to stand for more than one hour.  (R:315)  Dr. Ligon did not directly address Dr. May's suggestion that Plaintiff could not perform continuous pedaling.  (R:309-316)  The State agency medical consultant on initial consideration, Randal Reid, M.D., addressed neither of Dr. May's suggested limitations regarding pedaling nor standing.  (R:289-296)  Both State agency medical consultants, however, noted Dr. May's objective examination findings and assessed unlimited push and/or pull for operation of both hand and foot controls.  (R:290, 310)  Likewise, without acknowledging Dr. May's opinion regarding Plaintiff's limited pedaling, the ALJ outlined  Dr. May's objective examination findings and did not assess any limitation for operating foot controls.

10

The Court notes that Dr. May's suggested standing and pedaling limitations appear to be based on Plaintiff's report to him that she stopped working because her right knee, which she had to use when working the sewing machine, became painful and that she could not stand for more than an hour. (R:285) Thus his statement was not necessarily an opinion assessing the most that Plaintiff could do.

The ALJ also asserted that the conclusions of the State agency medical consultants supported a finding of "not disabled." (R:63) Both State agency medical consultants assessed that Plaintiff could perform exertional activities consistent with medium work. (R:63, 289-296, 309-116); 20 C.F.R. §§ 404.1567 (c), 416.967 (c) (definition of medium work). While the RFC assessed by Dr. Reid did not contain any limitations not incorporated into the ALJ's RFC (R:289-296), the RFC assessed by Dr. Ligon on reconsideration included postural limitations to accommodate Plaintiff's knee pain that are not included in the ALJ's RFC: only occasional climbing of ramp/stairs and never climbing ladder/rope/scaffolds. (R:311) Plaintiff's past work did not require any climbing, either as actually or generally performed. *See* (R:201, 207); DOT 786.682-054. Thus, it appears Dr. Ligon's RFC assessment would be consistent with the ALJ's finding of "not disabled."

The ALJ also noted that Plaintiff's activities of daily living included performing personal hygiene and household tasks such as sweeping, dishes, and laundry, driving, shopping, and going to church. (R:58, 61) The ALJ stated that the record contained no medical source statement from Plaintiff's treating doctors. (R:63) While Dr. Jose Barahona, M.D., provided a letter dated August 18, 2010, stating that he treated Plaintiff for conditions including arthritis and osteoporosis, he did not provide any opinion regarding the extent of Plaintiff's functional limitations stemming from such conditions. (R:359) Although the ALJ does not specifically comment on the remaining factors set

forth for an ALJ to consider in making a credibility determination, such factors were not necessarily relevant given the evidence in the record.

The Court recognizes that the ALJ's decision appears to misstate the record with respect to Dr. May's opinion, as discussed above.  Procedural perfection, however, is not required; a decision will not be vacated unless substantial rights have been affected.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) *(per curiam)*.  Plaintiff has not demonstrated that her substantial rights were affected by the errors detailed above.

The Court finds that neither the ALJ's credibility determination nor his disability determination results from legal error and that both are supported by substantial evidence in the record.  Plaintiff has failed to demonstrate that she is entitled to relief.

## CONCLUSION

Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.


**SIGNED** and **ENTERED** on March 17, 2014.



ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

12